GORDON REES SCULLY MANSUKHANI LLP
Spencer P. Hugret (SBN 240424)
shugret@grsm.com
Molly J. Mrowka (SBN 190133)
mmrowka@grsm.com
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

DYKEMA GOSSETT PLLC
John M. Thomas (SBN 266842)
jthomas@dykema.com
2723 South State Street, Suite 400
Ann Arbor, MI 48104
Telephone: (734) 214-7613
Facsimile: (734) 214-7696

SHOOK, HARDY & BACON LLP
Amir Nassihi (SBN 235936)
anassihi@shb.com
One Montgomery, Suite 2600
San Francisco, CA 94104
Telephone: (415) 544-1900
Facsimile: (415) 391-0281

Attorneys for Defendant
FORD MOTOR COMPANY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| IN RE: FORD MOTOR CO. DPS6 POWERSHIFT TRANSMISSION PRODUCTS LIABILITY LITIGATION<br><br><br>THIS DOCUMENT RELATES ONLY TO:<br><br>*Pedante, Mark v. Ford Motor Company,* 2:17-cv-06656-AB-FFM | No. 2:18-ml-2814-AB-FFM<br><br>Assigned to the Hon. André Birotte, Jr. Courtroom 7B; Magistrate Frederick F. Mumm Courtroom 580<br><br>**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES**<br><br>Date: February 28, 2020<br>Time: 10:00am<br>Courtroom: 7B<br><br>Trial Date: November 5, 2019 |

I, James P. Schratz, hereby declare:

1.   I have been retained in this matter by GORDON REES SCULLY MANSUKHANI LLP on behalf of Defendant, FORD MOTOR COMPANY, to provide an audit and opinion regarding the reasonableness of the attorneys' fees requested in Plaintiff's Motion for Attorney's Fees, Costs and Expenses ("Fee Motion") filed by KNIGHT LAW GROUP, LLP and KIESEL LAW LLP (collectively, "Plaintiff's Counsel").

2.   My opinions are set forth herein and relate to Plaintiff's Counsel's unreasonable hourly rates, transient and excessive billers, excessive intra-office/inter-office communication, vague entries, motion to remand entries, failure to allocate fees among successful versus unsuccessful claims, and the failure to apportion fees among all 30 IDP cases.  A table setting forth the total amount of my recommended fee disallowances in the event Plaintiff's Counsel is awarded fees is at the end of this declaration.

## QUALIFICATIONS

### I.   <u>My Background as a Legal Fee Auditor.</u>

3.   I am an attorney at law licensed to practice in the State of California and have been so licensed since 1976. I received my law degree from the University of San Francisco School of Law in June 1976, where I was the Editor-in-Chief of *The Law Review*. In September 1976, I joined the law firm of Heller, Ehrman, White & McAuliffe, where I worked as an associate in its litigation department.

4.   In March 1978 I left Heller, Ehrman, White & McAuliffe and joined a smaller firm until August 1980, when I joined Fireman's Fund Insurance Company in San Francisco, California, in its General Counsel's Office. My responsibilities included representing Fireman's Fund as attorney of record in various litigation

Gordon Rees Scully Mansukhani, LLP<br>275 Battery Street, Suite 2000<br>San Francisco, CA 94111

1

matters throughout the country. In addition, I supervised outside counsel throughout the country on various types of cases, including many complex civil litigation cases.

5.    In 1984 I left the General Counsel's Office and transferred to the Claims Department where I established the Major Litigation Unit, which was responsible for managing complex litigation throughout the country, including the $65 million bankruptcy of The Woodson Company. In this role, I was responsible for approximately 1,000 cases and a staff of ten people and became very familiar with the rates charged not only by Fireman's Fund "panel counsel," but also rates charged by solo practitioners and small, medium, and large law firms throughout the United States.

6.    In July 1990 I was promoted to Vice President Major Claims, where my duties were expanded to include responsibility for any case throughout the world that had potential exposure of $3 million or more, and responsibility for supervising approximately 100 adjusters. Again, I continued my involvement in supervising cases throughout the United States and stayed abreast of what solo practitioners and small, medium, and large law firms charged their respective clients.

7.    On January 1, 1994, I left Fireman's Fund to establish my own litigation management and consulting firm. I am the principal of Jim Schratz and Associates, a firm that conducts legal fee audits of various law firms throughout the country.

8.    Over the past twenty-five years, I have personally supervised or conducted approximately 3,000 legal fee audits throughout the country on behalf of both clients and law firms, including governmental agencies, corporations, and private individuals.  I have also served as an arbitrator for the Sonoma County Bar Association and the State Bar of California in their mandatory fee arbitration programs.

2

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

1

2        **A.    Court Opinions Considering My Audits in Ruling on Fee Requests.**

3        9.      I have qualified as an expert witness in numerous state and federal

4   courts, including Los Angeles Superior Court, San Francisco Superior Court,

5   Sacramento Superior Court, Orange County Superior Court, Alameda Superior

6   Court, Sonoma County Superior Court and Federal District Courts in Philadelphia

7   and Pittsburgh, Pennsylvania, Detroit, Michigan, Tulsa, Oklahoma, and San

8   Francisco, California.

9        10.     In 1999, I was appointed by the District Court for the Northern Mariana

10  Islands to audit approximately $22 million in legal fees in *In re the Estate of Larry*

11  *Lee Hillblom*, one of the founders of DHL Express, whose estate was valued at

12  approximately $1 billion. I was also retained by the United States Department of

13  Justice to conduct an audit of a fee request in a nationwide class action lawsuit

14  against the Immigration and Naturalization Service.

15       11.     In January 2010, I was retained by investor Carl Icahn to serve as

16  special litigation counsel to review approximately $60 million in legal fees in the *In*

17  *re Tropicana Entertainment, LLC, et al*, Case No. 08-10856 (KJC) ("*Tropicana*") in

18  the United States Bankruptcy Court for the District of Delaware.

19       12.     In February 2010, in *Department of Fair Employment and*

20  *Housing v. United Dominion Realty* (Case Nos. 07CC12067, 02CC12069) the court

21  accepted our audit findings, stating:

22          In awarding fees in these amounts, the court has fully accepted the
23          declaration of James P. Schratz in opposition to the motion, including
            all of his recommended reductions. The court finds his qualifications to
24          be impressive. Likewise his reasoning as to why the fees sought are
25          excessive is persuasive.

26

27                                           3

28  DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S
    RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR
    ATTORNEYS' FEES, COSTS, AND EXPENSES

13.     In April 2010, I was again retained by Mr. Icahn to serve as special litigation counsel to review an additional $6 million in legal fees in the related *In re Adamar of New Jersey, Inc. and Manchester Mall, Inc.*, Case No. 09-20711 and 09-20716 in the United States Bankruptcy Court for the District of New Jersey.

14.     In the case of *Madrid v. Gomez*, No. C-90-3094, United States District Court for the Northern District of California, I was retained by the California Department of Justice to audit a fee request of $8.3 million in connection with a prisoners' civil rights case at Pelican Bay State Prison. The audit disclosed a number of billing concerns and the audit report was submitted to Judge King, the settlement judge. The case resulted in a negotiated settlement of $4.25 million, or a reduction of approximately 50 percent. A copy of an article from *The Recorder* dated September 26, 1995*,* describing the settlement is attached as **Exhibit 1**.

15.     In *Rios v. Rowland*, No. 330211, Superior Court of California, County of Sacramento, I was retained to audit a fee request of $1.5 million. The audit disallowed a significant amount of the fees requested. The court upheld the audit results and reduced the fee request to approximately $227,000.

16.     In *CVB Corporation v. John Cavallucci*, No. 156505, Superior Court of California, County of Marin, I was retained to audit a fee request of approximately $2 million pursuant to a contractual provision. The audit uncovered a number of billing abuses, and the court disallowed approximately 50 percent of the fee request.

17.     In *Aguilar v. Avis Rent-A-Car System*, No. 948597, Superior Court of California, County of San Francisco, I was retained to audit a fee request of approximately $1.3 million. The audit disclosed a number of problem areas and disallowed a significant amount. The court followed the audit findings and reduced the request by approximately 50 percent, to $650,000.

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

18.     In *McCauley v. BFC Direct Mailing*, No. 5711562, Superior Court of California, County of Orange, the plaintiff alleged violations of campaign election laws and sought attorneys' fees of $1.1 million. The defendant, Howard Jarvis Tax Reform Movement, hired this office to conduct a legal fee audit, and we disallowed approximately 50 percent of the fees. The court followed the audit findings and awarded approximately $525,000 of the $1.1 million requested.

19.     In *Florida Asset Financing Corp. v. Borton, Petrini & Conron*, United States District Court, Central District of California, Southern Division (Santa Ana), Case No. 8:96 cv 01144 AHS-MLG, we were retained by a private client to audit a fee request of $600,000. Based on the audit report, the court awarded $80,000.

20.     I conducted an audit of plaintiff's motion for attorneys' fees in *Adam v. Norton*, Northern District of California, Case No. C-98-2094 CW, a case in which plaintiff sought total fees in the sum of $1,726,312.92. The Special Master appointed by Judge Claudia Wilken to adjudicate the fee petition cited my declaration and recommended a total award of only $434,581.95 in attorneys' fees, less than 25 percent of the amount originally sought. The Special Master stated, "I believe Mr. Schratz' expert testimony meets the standard. Schratz's testimony is relevant, in that Schratz has provided a useful breakdown of the time spent by Plaintiff's attorneys, and reliable, in that Schratz has accurately summarized the time and expenses claimed by Plaintiff's attorneys." It must be stated the Special Master did not follow all of the audit recommendations. However, the Special Master did recommend reducing the fee request by approximately 75 percent, from $1,726,312.92 to $434,581.95, a result that Judge Claudia Wilken adopted in total in July 2005.

21.     In January 2004, in *Frieders v. City of Glendale*, No. BC263271, Los Angeles County Superior Court Judge David A. Workman adopted our findings with respect to an audit of plaintiff's fee request. As a result, plaintiff's request of $4.1

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

5

1  million in fees was reduced to $1.1 million. The court specifically referred to our

2  audit and reduced the fee request by approximately 75 percent. A copy of that order

3  is attached as **Exhibit 2**.

4       22.     In August 2005, in *Rose v. Lancaster School District,* No. BC 303843,

5  Superior Court of California, County of Los Angeles, the court adopted the

6  methodology, analysis, and recommendations contained in our audit, and reduced

7  plaintiff's fee request by 58 percent from $498,000 to $209,000.

8       23.     In *North Pacifica, LLC v. City of Pacifica*, United States District Court,

9  Northern District of California, Case No. C-01-4823 EMC, plaintiff sought damages

10  at trial of approximately $16 million. I was retained by the defendant to audit

11  plaintiff's request for $2,046,759.16 in fees and costs. In awarding plaintiffs only

12  $453,810.75 in fees, Magistrate Judge Edward M. Chen cited my audit with

13  approval with respect to various billing issues. A copy of the order dated December

14  16, 2005 is attached as **Exhibit 3**, and states, in pertinent part:

> [B]ased on the information provided in the declaration, Mr. Schratz has
> demonstrated that he is qualified to opine about fee awards and that his
> methodology in evaluating the billing records of NP's attorneys in this
> case is reasonable and sufficiently reliable. For example, Mr. Schratz's
> approach to categorizing the nature of the work of the attorneys is
> reasonable and sufficiently reliable as is, overall, his approach to
> unblocking the block-billed time entries.

21       24.     In *Poland v. L.A. Boxing*, Orange County Superior Court, Case No. 30-

22  2009 0121184, plaintiff filed a lawsuit alleging eight causes of action against the

23  defendants. Based upon their expert's testimony at trial, plaintiff had suffered

24  $4,959,023 to $6,423,566 in damages. The jury found in favor of the plaintiff on two

25  causes of action and on the statutory failure to pay owed wages claim awarded

26  $2,800. This was the only cause of action on which they were successful that

27

28

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S
RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR
ATTORNEYS' FEES, COSTS, AND EXPENSES

*(left margin)* **Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

contained a statutory attorneys' fee provision. Plaintiff's counsel submitted a motion for attorneys' fees. They submitted bills totaling $709,242.50, and initially sought a 1/6 allocation (because two causes of action had been dismissed just prior to trial), or $118,207.08 in fees. I was retained by the defendant to audit plaintiff's request. Based upon deficiencies in the billing records such as block billing, redactions, excessive time to create deposition summaries, and excessive internal conferencing, and allocation issues, I recommended that plaintiff's counsel only be awarded fees in the range of $25,000 to $30,000. In a subsequent supplemental declaration, plaintiff increased the amount of attorneys' fees sought to approximately $350,000. In July 2011, the Court found that plaintiff should only be awarded $30,000 – which is the amount that I had recommended.

25.    In *Shiow Huey-Chang v. County of Santa Clara, et al.*, Santa Clara County Superior Court, Case No. 5:15-cv-02502-RMW, plaintiff filed a lawsuit alleging excessive force by police. Plaintiff prevailed at jury trial and was awarded $40,000.00, although certain parts of the verdict were overturned by a defense post-trial motion for judgment as a matter of law. Plaintiff was deemed the prevailing party for purposes of attorneys' fees and defendants did not dispute that finding for purposes of the fee motion.  Plaintiff sought $970,063.74 in attorneys' fees and costs. I was retained by the defendant to audit plaintiff's request. I recommended that the billing rates being requested be reduced and that fees related to excessive staffing and time billed for certain aspects of the case be adjusted. I recommended that the fee request should be reduced to $236,860.38 plus costs of $27,575.72 for a total of $264,436.10. The court's reasoning and deductions tracked many of those set forth in my declaration and it ruled that plaintiff's fee award, including costs, should be reduced to $350,000.00.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

26.     In *Carroll v. State of California, et al.,* Sacramento County Superior Court Case No. 34-2012-00135527-CU-OE-GDS, plaintiff was dismissed from her employment as a Staff Attorney with the California Commission on Teacher Credentialing.  She filed suit alleging the termination was a wrongful retaliation for whistleblowing. Plaintiff prevailed at trial and sought attorneys' fees of $1,542,397.75, plus a 2.0 multiplier for a total of $3,084,795.50. I recommended that the billing rates being requested be reduced and that fees related to transient billers, unsuccessful claims, clerical billing, and duplicative billing be adjusted. I recommended that the fee request should be reduced to $323,720.37. The court awarded $638,484 or approximately 21 percent of the fees requested after reducing the requested billing rates, reducing the time billed for certain tasks, and reducing the requested multiplier.

27.     In *Whitfield v. Broadspectrum*, Los Angeles County Superior Court Case No. BC632479, plaintiff alleged she was terminated from her employment due to discrimination, harassment, and retaliation.  In all, she initially alleged eight causes of action against five defendants. Three defendants were dismissed prior to trial as were all causes of action except for a FEHA retaliation claim and termination in violation of public policy. Plaintiff prevailed at trial and sought attorneys' fees of $672,086.66 with a 1.25 multiplier for a total of $840,108.325. I recommended that the fee request should be reduced to $293,420.79 with no multiplier. The court reviewed the fee application and awarded $483,600 with no multiplier.

28.     In United States of America at al. ex rel.  *John Miller v. Carecore National, LLC et al.*, Case No. 13-cv-1177(RJS), in the United States District Court, Southern District of New York, Relator John Miller ("Relator") filed suit alleging defendants engaged in medical billing practices that defrauded the federal government and several states. The United States intervened and entered into a

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

stipulation of settlement and dismissal with defendant CareCore National LLC. As part of the stipulation, Relator filed a motion for attorney's fees and costs and expenses seeking a total of $2,319,023.30 against CareCore. I recommended that the billing rates being requested be reduced and that fees related to excessive billing entries for drafting the complaint, legal research, document review, and intraoffice conferencing be adjusted. The court awarded $1,401,813.10 after reducing the time billed for certain tasks. A copy of the court opinion is attached as **Exhibit 4**.

29.     In *Vista Outdoor, Inc. v. Reeves Family Trust, et al.,* Case No. 16 Civ. 5766, in United States District Court, Southern District of New York (May 24, 2018), Plaintiff Vista Outdoor, Inc. ("Vista") filed suit asserting breach of contract and additional claims arising out of its purchase of Jimmy Styks, LLC, a stand-up paddle board manufacturer. The Court granted partial summary judgment for Vista, which was awarded $126,642 in damages. Vista then sought $5,737,240.84 in attorney's fees, costs and pre-judgment interest. I recommended that the associate and paralegal billing rates being requested be reduced and that fees be further reduced related to block billing, overstaffing, excessive conferencing, clerical tasks and unfiled motions. The court ultimately reduced all associate and paralegal rates, reduced all attorney hours by 35%, reduced fees for clerical work, reduced expert rates by 50% and declined to impose pre-judgment interest.

**B.     Trial or Deposition Testimony In Support Of Law Firm Fee Requests.**

30.     The following is a sampling of cases where I have provided deposition and/or trial testimony in support of a law firm's fee request. It is important to emphasize that we use the same legal fee audit methodology whether we are retained by a law firm in support of its fee request or retained by an opposing party in

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

9

opposition to the fee request. The purpose of the audit is to give an honest unbiased opinion on the reasonableness of the legal fees.

31.     In *PNY Technologies, Inc. v. Miller, Kaplan, Arase & Co., LLP*, Case No. 3:15-cv-01728-MMC, in the United States District Court, Northern District of California, I testified in support of the national law firm Winston & Strawn's request for fees.

32.     In *Gen. Charles E. Yeager, Victoria Yeager, Charles E. Yeager Revocable Living Trust, and General Chuck Yeager Foundation v. Don A. Lesser, The Lesser Law Group, and Does 1 through 20, inclusive*, Case No. 34-2011-00109638, in the Superior Court of California, County of Sacramento, I testified in support of the law firm's request for fees.

33.     In *North Coast Engineering, Inc. v. State Farm General Insurance Company, et al.,* Case No. SCV 243762, in the Superior Court of California, County of Sonoma, I testified in support of a request for fees submitted by the Law Offices of Duncan James.

34.     In *Victaulic Company v. American Home Assurance Company, et al.,* Case No. RG12642929, in the Superior Court of California, County of Alameda, I testified in support of Pillsbury Winthrop's request for fees.

35.     In *Sonic Automotive, Inc., v. Chrysler Insurance Company, et al.,* Case No. 1:10CV717, in the United States District Court for the Southern District of Ohio – Western Division, we were retained to audit fees and expenses for over $10 million submitted by the law firms of Hinshaw & Culbertson LLP, Broad & Cassel, James McElroy & Diehl, P.A., and Williams & Connolly LLP. We performed a legal fee audit according to our standard audit methodology.

36.     In *EDUCAP, Inc. et al., v. Philadelphia Indemnity Insurance Company*, Civil Action No. 1:13-cv-72 LO/IDD, in the United States District Court for the

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Eastern District of Virginia – Alexandria Division, we were retained to audit $3.9 million in fees for the law firms of Williams & Connolly LLP, Simpson Thacher & Bartlett LLP, Skadden, Arps, Alte, Meagher & Flom LLP, and Jaffe Raitt Heuer & Weiss PC. We performed a legal fee audit according to our standard audit methodology.

37.     Of course, not all courts have accepted my audit findings.[1]  However, even in the cases in which the Court has not accepted all of the audit findings, the court has often reduced the fee application by a significant amount. *See, e.g., Lopez v. San Francisco Unified School District,* United States District Court, Northern District of California, Case No. CV-96-3585SI.

38.     Attached hereto as **Exhibit 5** is a true and correct copy of my Curriculum Vitae, which lists my work history, my publications, and my general experience.

39.     An audit does not always uncover overbilling. On numerous occasions, I have been retained by a client to audit a legal bill and have informed the client that there is little, if any, overbilling and that the client should pay most, if not all, of the invoice.

40.     As a standard practice, I make an offer to all of my clients to review the bills free of charge and arrive at a preliminary opinion as to whether an audit would uncover any overbilling, so as to make an audit cost efficient. I estimate that in

---

[1] *See Oberfelder v. City of Petaluma,* United States District Court, Northern District of California, Case No. 3:98-cv-01470-MHP; *Estrada v. FedEx,* Superior Court of California, County of Los Angeles, Case No. BC210130 (Court of Appeal reversed trial court's award of attorneys' fees using a 2.0 multiplier as excessive, and remanded for recalculation of an appropriate fee award); *Millar v. BART,* Superior Court of California, County of Alameda, Case No. C830013-9; *Lopez v. San Francisco Unified School District,* United States District Court, Northern District of California, Case No. CV-96-3585 SI; *Gober v. Ralph's Grocery Company,* Superior Court of California, County of San Diego, North County Judicial District, Case No. N72142; *Miller v. Vicorp,* United States District Court, Northern District of California, San Jose Division, Case No. CV-03-00777-RMW; *Pop, et al. v. Pasadena Area Community College District,* Superior Court of California, County of Los Angeles – Central District, Case No. BC481207.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

11

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

1   approximately 10 to 15 percent of the requests I receive, I suggest to the client that

2   an audit is not cost justified.

3        41.    On numerous occasions, I have been retained by a law firm engaged in

4   litigation with a client to conduct an audit, and if the audit discloses no overbilling I

5   testify as an expert witness on behalf of the law firm. The following is a partial list

6   of the law firms that I have audited where the audit disclosed that most, if not all of

7   the fees, were reasonable.

        Pillsbury Winthrop Shaw Pittman
        Skadden Arps
        Sidley & Austin
        Manatt, Phelps & Phillips
        Mower, Koeller, Nebeker, Carlson & Halluck
        Lanahan & Reilley
        Lurie & Zepeda
        Banning, Micklow, Bull & Lopez
        Robles & Castles
        Thelen Reid & Priest
        Stoel Rives
        Robinson & Cole
        LeBoeuf, Lamb, Greene & MacRae,
        Husch & Eppenberger
        Parson, Behle & Latimer
        Christiansen Miller Fink Jacobs Glaser Weil & Shapiro, LLP
        Berding & Weil
        Meredith Weinstein & Numbers
        Spector Law Offices

     42.    I have published approximately 35 articles, many of which involve the control of legal fees and abuses in the billing practices of attorneys.  I wrote an article on employing legal fee auditors in fee-shifting cases, which was published in *Trial Diplomacy Journal.* Most recently, I wrote an article, "How to Win a Fee Petition," which was published in a number of publications including *The Rhode Island Bar Journal*, *The Practical Litigator*, *The Federal Lawyer* and

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

12

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S
RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR
ATTORNEYS' FEES, COSTS, AND EXPENSES

Business Laws, Inc.'s *Law Department Management Adviser*. Among other points, this article listed various "red flags" or questionable billing practices that should be avoided in submitting a fee application.

## STANDARD OF REVIEW

43.     In conducting a legal fee audit, I analyze the invoices and work product generated in view of one of two standards.  The first standard I use when opposing a fee application is contained in the retainer agreement between the law firm and the client.  Second, in addition to looking at such agreements, I look to established case law and State Bar opinions for guidance as to what are acceptable billing practices.

44.     To the extent there are instructions from the client, State Bar Opinions and case law may supplement or even override such instructions.  It is important to note, however, that the case law referenced in this report is not being cited for its legal authority, but rather to establish that there is a foundation for the opinions stated herein.  In that way, the cases may be analogized to Generally Accepted Accounting Principles, commonly known as GAAP, which is a collection of commonly followed accounting rules and standards for financial reporting.

45.     The Fee Motion in this matter states that it was taken on a contingency basis. (See Fee Motion 15:8-16:25.)  This typically means the plaintiff pays nothing unless and until he prevailed in the matter.  In other words, if a court found that defendant had prevailed, plaintiff would not be entitled to any attorneys' fees whatsoever. On the other hand, if a court found that plaintiff had prevailed, then they would be entitled to seek to recover their reasonable and necessary fees from the defendant against whom he prevailed.

46.     This type of agreement appears to reward liberal, if not actual, excessive billing by the attorneys and other legal professionals: That is, the more

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

13

they billed, the more fees they could claim under the fee petition, and the more the attorneys stand to recover.

47.     Furthermore, in the auditor's experience, there are no billing guidelines in a contingency fee relationship and the firm's billing is not contemporaneously reviewed by the client. The lack of any incentive to conserve fees can lead to lax oversight of billing practices, particularly when any billing overages accrue to the benefit of the ones who are billing. This lack of incentive to control fees is especially troublesome in light of the magnitude of the fees requested in this case and the fact that defendant who is adversarial to the plaintiff is being asked to pay the extraordinary fees in prosecuting the case.

48.     The auditor approaches all legal fee audits with the assumption that most attorneys do not intentionally inflate their bills, and that there must be a "preponderance of the evidence" to support an audit finding that a certain amount of fees should be disallowed. In this regard, the auditor also believes that attorneys should be given the benefit of the doubt where possible overbilling may have occurred. On the other hand, in those cases where it is difficult to determine the nature and extent of the possible overbilling due to the firm's questionable billing practices, it is incumbent upon the law firm to justify its fees, including hourly rates.

**SCOPE OF AUDIT**

49.     In forming my opinion in this matter, I have reviewed the Fee Motion and accompanying declarations with attached billing entries, as well as case documents including pleadings, motions and discovery.  I am not being compensated based upon my "success" at reducing the requested fees.

50.     The starting point in any audit is to determine the lodestar, or the amount being requested.  Plaintiff's Counsel requests lodestar fees of **$385,996.25**. Paragraph 2 of the Declaration of Steve Mikhov in Support of Plaintiff's Motion for

14

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Attorney's Fees, Costs and Expenses ("Mikhov Declaration") breaks down the fee totals, without the requested multiplier, as follows:

| Law Firm | Total Fees |
|---|---|
| Knight Law Group, LLP | $102,155.00 |
| Kiesel Law LLP | $283,841.25 |
| | **$385,996.25** |

51.    The auditor's independent calculations of Plaintiff's Counsel's fee totals match the amount set forth in the Knight Law Group, LLP ("Knight Law") and Kiesel Law LLP ("Kiesel Law") billing invoices, although the timekeepers and hourly rates stated in the Declaration of Paul Kiesel in Support of Plaintiff's Motion for Attorney's Fees, Costs and Expenses ("Kiesel Declaration") do not entirely match the timekeepers and hourly rates set forth in Kiesel Law billing invoices.

52.    For instance, the Kiesel Declaration states that Paul Kiesel's hourly rate is $1,100 while the invoices reflect hourly rates of $1,100 and $1,280, but do not address the reason for the rate increase.  Similarly, the Kiesel Declaration states that Jeffrey Koncius' hourly rate is $895 but the billing invoice reflect hourly rates of $825 and $895 without addressing the discrepancy.  Further, the Kiesel Law billing invoices contain entries for attorneys with initials "SG" and "CC" but the Kiesel Declaration does not provide the names for these attorneys and does not describe their legal education or experience.

53.    Accordingly, I use **$385,996.25** as the starting point of the audit and address disallowances for the hourly rate discrepancies and timekeepers "SG" and "CC" below.   However, as a preliminary matter, while $385,996.25 is the starting point of the audit, it is my opinion that this entire amount should not be awarded to

15

Plaintiff's Counsel given that the fees at issue in this audit were not solely incurred for the benefit of Mr. Pedante, but for the benefit of all 1,115 MDL cases followed by all 30 IDP cases.

54.     The majority of Kiesel Law's billing entries – from the inception of the MDL on February 2, 2018 (wherein Mr. Pedante was a member of the initial transfer group) through November 2, 2018 – are related to all 1,115 member MDL cases.  This amounts to **283.80** total hours and **$202,753.50** in fees as set forth in **Exhibit 6.**  After November 2, 2018, a smaller sub-set group of 30 cases was created, referenced as "IDP" in the billing entries.  Work from November 2, 2018 to the end of the claimed billing entries appear to be for this smaller subset, as well as the entire MDL.  Entries during this time period amount to **108.80** total hours and **$81,087.75** in fees as set forth in **Exhibit 7.**

55.     Knight Law acted as primary counsel for Mr. Pedante.  MDL No. 2814 had not yet been established during Knight Law's initial billing entries up to January 22, 2018 so entries during that time period would arguably be specific to Mr. Pedante's case without requiring apportionment to other cases.  Entries during this time period total only **7.1** hours and **$2,997.50** in fees as stated in **Exhibit 8.**  However, while the MDL had not yet been established during this time period, the 7.1 hours are almost entirely disallowed in the categories of disallowances discussed below for transient/excessive billers, intra-office/inter-office communication and motion to remand entries.

56.     From February 2, 2018 to November 2, 2018 – these are largely MDL No. 2814 general Knight Law billing entries related to the test Motion to Remand and status conferences.  Entries during this time period total **134.6** hours and **$50,915.00** in fees as set forth in **Exhibit 9**.

57.     From November 3, 2018 to January 2019, the Knight Law entries

16

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S
RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR
ATTORNEYS' FEES, COSTS, AND EXPENSES

appear to be a combination of entries some of which are MDL No. 2814, some of which are IDP, some of which are Pedante only.  Entries during this time period total **96.9 hours** and **$35,565.00** in fees as set forth in **Exhibit 10**.

58.     Rather than engaging in a line-by-line apportionment of fees between Mr. Pedante, the 1115 MDL No. 2814 cases, and 30 IDP cases, I have audited all of the Kiesel Law and Knight Law fees based on "red flags" in the billing entries such as unreasonable hourly rates, transient and excessive billing entries, vague entries, motion to remand entries and failure to allocate the fees between successful and unsuccessful claims.

## FINDINGS AND OPINIONS

59.     My findings and opinions are each addressed separately herein, and fee disallowances are recommended where appropriate.   My findings and opinions relate to the following areas:

I.  Unreasonable Hourly Rates;

II.  Transient and Excessive Billers;

III.  Excessive Intra/Inter-Office Communication;

IV.  Vague Entries;

V.  Motion to Remand Entries, and Failure to Allocate Among Successful versus Unsuccessful Claims.

60.     It is my opinion, based on the reasons that follow below, that Plaintiff's Counsel's fee request is unreasonably inflated and lacks credibility.

## I.     UNREASONABLE REQUESTED HOURLY RATES

61.     I regularly have access to current law firm rates in conducting legal fee audits and auditing law firm billing invoices. I also regularly review court opinions on attorney's fee motions and requests and am familiar with what attorneys in the Superior Court of California for the County of Los Angeles and the United States

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

District Court for the Central District of California are seeking as hourly rates and what courts are awarding, including, but not limited to, firms specializing in consumer and general liability cases. I also recently reviewed nearly 50 fee requests filed within the previous few years in the Los Angeles area to survey what Southern California attorneys are seeking as hourly rates and what courts are awarding. Based on my experience in having conducted approximately 3,000 legal fee audits, my experience as an attorney and expert in legal fees over the past 40 years, and my review of the above-mentioned material, I have personal knowledge of hourly billing rates for attorneys in the Los Angeles market area. On that basis, it is my opinion that the billing rates being claimed in the Fee Motion are unreasonable and that hourly rates should be adjusted.

## A.   <u>Not Usual and Customary Rates Paid by Clients, and Insufficient Documentation of Reasonableness of Requested Hourly Rates</u>

62.    "The established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum*, 465 U.S. at 895-96 n. 11, 104 S.Ct. 1541).

63.    "The burden rests with the prevailing party to justify the reasonableness of the requested rate," and plaintiff's attorney "should establish his hourly rate with satisfactory evidence—in addition to the attorney's own affidavits." *Houston v. Cotter*, 234 F. Supp. 3d 392, 402 (E.D.N.Y. 2017), citing *Hugee v. Kimjso Apartments, LLC*, 852 F. Supp. 2d, 281, 298 (E.D.N.Y. 2012).

64.    There is no indication or supporting documentation in the Fee Motion or two supporting declarations that the rates being sought here are Plaintiff's

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

18

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

Counsels' usual and customary rates *and* that their clients routinely pay these rates for noncontingent cases.  Further, it is unclear from the supporting declarations the extent to which Plaintiff's Counsel's requested rates were opposed in the prior cases cited therein.  Accordingly, Plaintiff's Counsel have not met their evidentiary burden.

**B.     Plaintiff's Counsels' Failure to Substantiate Their Requested Hourly Rates**

65.     The result of Plaintiff's Counsels' insufficient supporting declarations and evidence is that "[Plaintiffs] have provided the court with no credible source to determine if the hourly rates they seek are reasonable. Reasonable hourly rates are calculated by reference to 'prevailing market rates in the relevant community,' with a special emphasis on fees charged by lawyers of 'comparable skill, experience, and reputation.' *Davis v. City of San Francisco, 976 F.2d 1536, 1546 (9th Cir. 1992).*" *Jacobs v. California State Automobile Association Inter-Insurance Bureau* (N.D. Cal. 2009) 2009 U.S. Dist. LEXIS 101586, *8-9. A true and correct copy of the *Jacobs* opinion is attached hereto as **Exhibit 11** and incorporated herein by this reference.

66.     The Court in *Muniz v. United Parcel Service, Inc.* also demanded relevant information regarding hourly rates from the party seeking attorneys' fees:

> To ascertain an attorney's reasonable hourly rate, courts consider "the hourly prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type." *Ketchum v. Moses, 24 Cal.4th 1122, 1133, 104 Cal. Rptr. 2d 377, 17 P.3d 735 (2001)* (emphasis in original). The moving party has the burden "to prove the appropriate market rate to be used in calculating the lodestar." *MBNA Am. Bank, N.A. v. Gorman, 147 Cal.App.4th Supp. 1, 16, 54 Cal. Rptr. 3d 724 (2006).*

*Muniz v. United Parcel Service, Inc.* (N.D. Cal. March 25, 2011) 2011 U.S. Dist. LEXIS 36697, *3-4. A true and correct copy of this opinion is attached hereto as **Exhibit 12** and incorporated herein by this reference.

19

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

67.    The *Muniz* court went on to analyze the fee request at issue in that case. The court noted that although the attorney requesting fees indicated when he graduated from law school (1970), the primary focus of his law practice (individuals in employment law cases), the number of depositions he had taken, and the number of times he had gone to trial (35), he "did not indicate the disposition of any of his cases." (*Id.*, at *4-5.)

68.    The *Muniz* court also found fault with the supporting declarations submitted in support of plaintiff's fee request. The plaintiff in that case offered declarations from a solo employment law practitioner and a partner from another firm. *Muniz, op. cit.* at *5. The court found those declarations to simply opine "in boilerplate language" that the rates were reasonable without articulating the basis for their conclusions. *Id.* The Court further stated that:

> Although these declarants may have expertise related to attorneys' fee awards, courts are not required to rely on opinion evidence that is simply "the ipse dixit of the expert." *Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997)*; see also *Hensley v. Eckerhart, 461 U.S. 424, 440 n.15, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)*.

> *Id.*

See also *Panek v. Donald J. Braasch Constr., Inc.*, 2005 U.S. Dist. LEXIS 46467, *10-11 (W.D.N.Y. 2005). A true and correct copy of this opinion is attached hereto as **Exhibit 13** and incorporated herein by this reference.

**C.    Small Law Firm Billing Rates**

69.    According to their websites, Kiesel Law and Knight Law are small law firms consisted of 11 attorneys and 10 attorneys, respectively.  In my opinion and experience, small firms do not charge hourly rates in the same range as larger law firms, because large law firms' client base consists mainly of large corporate clients who are more willing and more able to pay the higher rates of firms who specialize in large complex litigation matters and who charge for, among other reasons, higher

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

overhead costs. The Ninth Circuit provides that "rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Davis v. City of San Francisco*, 976 F. 2d 1536, 1545 (9th Cir. 1992).

70.     The "court should look to fees charged by attorneys comparably situated to those representing the movant. Thus, if the movant is represented by a small or medium-size firm, the appropriate rates are those typically charged by such firms, whereas a movant may obtain higher compensable rates if represented by a large urban firm …." *Algie v. RCA Global Communications*, 891 F. Supp. 875, 895 (S.D.N.Y. 1994), citing *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058-59 (2d. Cir. 1989) (district court not required to assign the same hourly rate to every law firm in the same city, since several market rates may prevail in a large and diverse legal community such as New York City; lodestar rate can be calculated by specific reference to small-to-midsize firms).

71.     The significance of law firm size is also confirmed by the 2016 Real Rate Report, a comprehensive report on legal billing rates:

> **Law Firm Size Has the Largest Impact on Hourly Rates**
> Of the more than 350 factors we tested, our analysis confirmed that law firm size was the largest driver of law firm rates. Regardless of the market location or type of work performed, larger firms consistently charged higher rates. These data suggest that larger law firms have been more successful not only in promoting an integrated "one-stop-shop" value proposition but also in obtaining a greater share of large matters. Location (especially in New York or Washington, DC), years of experience, and the designation as a partner also heavily impacted a lawyer's hourly rate.

> Relevant pages of the 2016 Real Rate Report are attached as **Exhibit 14** (See page 6, column 2.)

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

21

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S
RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR
ATTORNEYS' FEES, COSTS, AND EXPENSES

72.     Large law firms spend a considerable amount of time and money marketing their services to establish "brand identification," so that potential clients will think of the law firm when they seek legal services. For example, Orrick, Herrington & Sutcliffe, a large firm, spends considerable resources to establish an identity as specialists in municipal bonds. In the auditor's experience, clients of larger firms are often drawn by this brand identification and specialization and price is not the major factor. By contrast, small law firms and solo practitioners do not devote large resources to marketing, and, therefore, their potential clients are much more price sensitive.

73.     *Greene v. City of New York*, 2013 U.S. Dist. LEXIS 154342 (S.D.N.Y. October 25, 2013) was another case in which the court noted that the size of the law firm was a significant factor in determining reasonable rates. The *Greene* court noted: "[T]he fact is that the large firms listed on the [National Law Journal] survey have acquired a reputation that allows them to command high rates in the market. Many other firms, in particular smaller firms that may be providing equally capable services, simply do not command anywhere near such rates ...." *Greene v. City of New York*, 2013 U.S. Dist. LEXIS 154342, *14, fn. 44. A copy of the *Greene* case is attached as **Exhibit 15**.

74.     In applying the Ninth Circuit standard for lodestar rates, the Central District of California recognized that the size of a firm can be taken into consideration when determining rates for lawyers of comparable ability and reputation. *Common Cause v. Jones* 235 F. Supp.2d 1076, 1081-1082 (C.D. Cal. 2002).  In *Jones*, when evaluating whether plaintiff's request for current rates was reasonable to establish the lodestar, the Court compared firms of similar size and reputation. See also the Ruling on Submitted Matters: Motion to Tax Costs and Motion for Attorneys' Fees in *Streisand v. Adelman*, Los Angeles County Superior

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

22

1  Court Case No. SC 077 257, filed May 10, 2004, p. 4. A true and correct copy of this

2  Ruling is attached hereto as **Exhibit 16**.

3        **D.**    **Recommended Hourly Rates**

4        75.    The Real Rate Report which I use in my audits is a publication with

5  data reflecting actual hourly rates that are paid to law firms for their legal work

6  throughout the United States, including the Los Angeles area. The most recent

7  version of the report is for 2018.

8        76.    Pages 5 of the 2018 Real Rate Report provides, in part:

9  *The 2018 Real Rate Report:*

10 *• Examines law firm rates over time*

11 *• Identifies rates by location, experience, firm size, areas of expertise,
industry, and timekeeper role (i.e., partner, associate, and paralegal)*

12 *• Itemizes variables that drive rates up or down*

13 *All the analyses included in the report are derived from the actual rates
charged by lawfirm professionals as recorded on invoices submitted and
approved for payment.*

14 *Examining real, approved rate information along with the ranges of those
rates and their changes over time highlights the role these variables play in
driving aggregate legal cost and income. The analyses can energize questions
for both corporate clients and law firm principals.*

15 *Clients might ask whether they are paying the right amount for different types
of legal services, while law firm principals might ask whether they are
charging the right amount for legal services and whether to modify their
pricing approach.*

16 *Some key factors that drive rates[1]:*

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

23

• *Geographic location - lawyers in urban and major metropolitan areas tend to charge more when compared with lawyers in rural areas or small towns.*

• *Degree of difficulty - the cost of representation will be higher if the case is particularly complex or time-consuming; for example, if there are a large number of documents to review, many witnesses to depose, and numerous procedural steps, the case is likely to cost more (regardless of other factors like the lawyer's level of experience).*

• *Experience and reputation - a more experienced, higher-profile lawyer is often going to charge more, but absorbing this higher cost at the outset may make more sense than hiring a less expensive lawyer who will likely take time and billable hours to come up to speed on unfamiliar legal and procedural issues.*

• *Overhead - the costs associated with the firm's support network (paralegals, clerks, assistants), document preparation, consultants, research, and other expenses.*

*Footnote 1: David Goguen, J.D., University of San Francisco School of Law (2017) Guide to Legal Services Billing Retrieved from https://www.lawyers.com/legal-info/research/guide-to-legal-services-billing-rates.html*

77.     The 2018 Real Rate Report provides the following median partner and associate hourly rates with respect to consumer, product liability and general liability litigation.

| Practice Type | Median Hourly Rate |
|---|---|
| General Liability: Consumer Related Claims - Partner | $466 |
| General Liability: Consumer Related Claims - Associate | $303 |
| Consumer Goods – Partner | $375 |
| Consumer Goods – Associate | $250 |
| General Liability: Product & Product Liability - Partner | $310 |
| General Liability: Product & Product Liability - Associate | $225 |
| General Liability – Partner (Los Angeles) | $430 |
| General Liability - Associate (Los Angeles) | $265 |

24

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S
RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR
ATTORNEYS' FEES, COSTS, AND EXPENSES

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   (See pages 14, 42, 44 and 87 of the 2018 Real Rate Report attached hereto as

2   **Exhibit 17**.)

3   78.   Based upon my years of experience performing approximately 3,000

4   audits, the 2018 Real Rate Report, Plaintiff's Counsel's experience, the type of

5   litigation involved in this case, and the small size and location of Kiesel Law and

6   Knight Law in the Los Angeles area, the following tables set forth my recommended

7   adjustments to the requested billing rates in this case:

| KIESEL LAW | | | |
|---|---|---|---|
| **Attorney (Initials)** | **Admitted** | **Requested Rate** | **Adjusted Rate** |
| Paul Kiesel (PRK) | 1985 | $1,280 | **$500** |
| Paul Kiesel (PRK) | 1985 | $1,100 | **$500** |
| Jeffrey Koncius (JAK) | 1995 NJ, 1997 NY, CA | $895 | **$450** |
| Jeffrey Koncius (JAK) | 1995 NJ, 1997 NY, CA | $825 | **$450** |
| SG [not discussed in declaration] | Unknown | $480 | **$0** |
| Nicole Ramirez (NR) | 2011 | $420 | **$300** |
| Stephanie Taft (ST) | 2016 | $375 | **$250** |
| CC [not discussed in declaration] | Unknown | $325 | **$0** |
| | | | |
| KNIGHT LAW | | | |
| **Attorney (Initials)** | **Admitted** | **Requested Rate** | **Adjusted Rate** |
| Steve Mikhov (SBM) | 2003 | $550 | **$325** |
| Russell Higgins (RH) | 2003 | $450 | **$325** |
| Roger Kirnos (RK) | 2012 | $425 | **$325** |
| Lauren Ungs (LAU) | 2010 | $425 | **$325** |
| Amy Morse (ALM) | 2013 | $350 | **$325** |
| Kristina Stephenson-Cheary (KSC) | 2008 | $375 | **$225** |
| Mitch Rosensweig (MER) | 2012 MD 2014, DC 2018 CA | $325 | **$225** |
| Maite Colon (MC) | 2012 FL, DC, Puerto Rico 2018 CA | $300 | **$225** |

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S
RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR
ATTORNEYS' FEES, COSTS, AND EXPENSES

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

79.     Only 2 days ago, on January 27, 2020, the Honorable Philip S. Gutierrez of this Court in *Arias v. Ford Motor Company*, Case No. EDCV 18-1928 PSG (SPx), reduced the Knight Law requested hourly rates in a Motion to For Attorney's Fees to the same as the recommended adjusted rates in the above chart for attorneys, Mikhov, Morse, Stephenson-Cheung, Colon and Rosensweig.  A true and Court copy of the Court Order is attached hereto as **Exhibit 18.**  The hourly rates for "SG" and "CC" have been reduced to zero given there is no information about them in the Kiesel Declaration.  Note that "SG" and "CC" time entries are also disallowed as transient billers based on the minimal number of hours they billed on this matter.  The following table sets forth the total amount of Kiesel Law and Knight Law adjusted fees at the recommended hourly rates.

| KIESEL LAW | | | | | | |
|---|---|---|---|---|---|---|
| Attorney (Initials) | Requested Rate | Hours | Requested Fees | Adjusted Rate | Adjusted Fees | Difference |
| Paul Kiesel (PRK) | $1,280 | 20.65 | $26,432.00 | **$500** | $10,325.00 | $16,107.00 |
| Paul Kiesel (PRK) | $1,100 | 60.00 | $66,000.00 | **$500** | $30,000.00 | $36,000.00 |
| Jeffrey Koncius (JAK) | $895 | 107.80 | $96,481.00 | **$450** | $48,510.00 | $47,971.00 |
| Jeffrey Koncius (JAK) | $825 | 25.30 | $20,872.50 | **$450** | $11,385.00 | $9,487.50 |
| SG [not discussed in declaration] | $480 | 15.10 | $7,248.00 | **$0** | $0.00 | $7,248.00 |
| Nicole Ramirez (NR) | $420 | 124.70 | $52,374.00 | **$300** | $37,410.00 | $14,964.00 |
| Stephanie Taft (ST) | $375 | 34.85 | $13,068.75 | **$250** | $8,712.50 | $4,356.25 |
| CC [not discussed in declaration] | $325 | 4.20 | $1,365.00 | **$0** | $0.00 | $1,365.00 |
| No Charge Entries | $0 | 32.60 | $0.00 | **$0** | $0.00 | $0.00 |
| KIESEL LAW TOTALS: | | 425.20 | $283,841.25 | | $146,342.50 | $137,498.75 |
| KNIGHT LAW | | | | | | |
| Attorney (Initials) | Requested Rate | Hours | Requested Fees | Adjusted Rate | Adjusted Fees | Difference |
| Steve Mikhov (SBM) | $550 | 2.20 | $1,210.00 | **$325** | **$715.00** | **$495.00** |
| Russell Higgins (RH) | $450 | 86.70 | $39,015.00 | **$325** | **$28,177.50** | **$10,837.50** |
| Roger Kirnos (RK) | $425 | 27.50 | $11,687.50 | **$325** | **$8,937.50** | **$2,750.00** |
| Lauren Ungs (LAU) | $425 | 6.70 | $2,847.50 | **$325** | **$2,177.50** | **$670.00** |
| Amy Morse (ALM) | $350 | 3.30 | $1,155.00 | **$325** | **$1,072.50** | **$82.50** |
| Kristina Stephenson-Cheary (KSC) | $375 | 15.20 | $5,700.00 | **$225** | **$3,420.00** | **$2,280.00** |

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

26

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

| | | | | | | |
|---|---|---|---|---|---|---|
| Mitch Rosenweig (MER) | $325 | 106.00 | $34,450.00 | **$225** | **$23,850.00** | **$10,600.00** |
| Maite Colon (MC) | $300 | 20.30 | $6,090.00 | **$225** | **$4,567.50** | **$1,522.50** |
| No Charge Entries | $0 | 10.00 | $0.00 | $0 | **$0.00** | **$0.00** |
| **KNIGHT LAW TOTALS:** | | 277.90 | $102,155.00 | | **$72,917.50** | **$29,237.50** |
| | | | | | | |
| **KIESEL & KNIGHT TOTALS:** | | 703.10 | $385,996.25 | | **$219,260.00** | **$166,736.25** |

80.     Accordingly, Kiesel Law's and Knight Law's total adjusted fees amount to **$219,260.00** ($146,342.50 + $72,917.50) which amounts to a fee disallowance of **$166,736.25** ($137,498.75 + $29,237.50) from the starting lodestar of **$385,996.25.**

**Recommended Disallowance:**

**Starting Lodestar:  $385,996.25**
**Hourly Rate Adjustment Disallowance: - $166,736.25**
**Net Fees:  $219,260.00**

## II.     TRANSIENT AND EXCESSIVE BILLERS

81.     Plaintiff's Counsel collectively staffed this matter with 12 different attorneys.  7 of the 12 attorneys each billed less than 25 hours for the entries the case for collective fees of **$11,952.50** at adjusted hourly rates as set forth in the following chart.  4 of those 7 attorneys each billed less than 10 hours.   2 of the Kiesel Law attorneys with less than 25 hours each are described with the initials "SG" and "CC" in the billing invoices but their names, educational background and legal experience are not discussed in the Kiesel Declaration.

| KIESEL LAW | | | | | | |
|---|---|---|---|---|---|---|
| **Attorney (Initials)** | **Requested Rate** | **Hours** | **Requested Fees** | **Adjusted Rate** | **Adjusted Fees** | **Difference** |
| SG [not discussed in declaration] | $480 | 15.10 | $7,248.00 | **$0** | $0.00 | $7,248.00 |

27

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

| CC [not discussed in declaration] | $325 | 4.20 | $1,365.00 | $0 | $0.00 | $1,365.00 |
|---|---|---|---|---|---|---|
| **KIESEL LAW TOTALS:** | | **19.30** | **$8,613.00** | | **$0.00** | **$8,613.00** |
| | | | | | | |
| **KNIGHT LAW** | | | | | | |
| **Attorney (Initials)** | **Requested Rate** | **Hours** | **Requested Fees** | **Adjusted Rate** | **Adjusted Fees** | **Difference** |
| Steve Mikhov (SBM) | $550 | 2.20 | $1,210.00 | **$325** | $715.00 | $495.00 |
| Lauren Ungs (LAU) | $425 | 6.70 | $2,847.50 | **$325** | $2,177.50 | $670.00 |
| Amy Morse (ALM) | $350 | 3.30 | $1,155.00 | **$325** | $1,072.50 | $82.50 |
| Kristina Stephenson-Cheary (KSC) | $375 | 15.20 | $5,700.00 | **$225** | $3,420.00 | $2,280.00 |
| Maite Colon (MC) | $300 | 20.30 | $6,090.00 | **$225** | $4,567.50 | $1,522.50 |
| **KNIGHT LAW TOTALS:** | | **47.70** | **$17,002.50** | | **$11,952.50** | **$5,050.00** |
| | | | | | | |
| **KIESEL & KNIGHT TOTALS:** | | **67.00** | **$25,615.50** | | **$11,952.50** | **$13,663.00** |

82.     Page 5 of the March 2016 Los Angeles Bar Association Arbitration Advisory on bill padding attached as **Exhibit 19** states, in relevant part:

> *Generally, the determination of whether the matter was overstaffed is a question of fact the arbitrator must resolve. In a mandatory fee arbitration it is appropriate to place the burden of proof on the lawyer to demonstrate that the disputed matters/tasks were properly staffed and not attempts to inflate time charged to a client.  Issues that may affect this factual determination may include the complexity or significance of the case, the litigious nature of the parties, the amount in controversy, client consultation in advance, the client's awareness and lack of objection, or any other fact tending to demonstrate whether it was appropriate for more than one lawyer or support staff to participate in a disputed task.*

83.     The State Bar of California Mandatory Fee Arbitration Advisory No. 2003-01, "Detecting Attorney Bill Padding," January 29, 2003, attached as **Exhibit 20**, states at page 5:

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

28

---

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

*The least experienced lawyers are called "associates". They are employees of the firm and are paid a salary and sometimes a bonus for billing high hours in a year.  Many firms pay bonuses if associates bill about 2,000 to 2,420 hours in a year.  Try to ascertain the plan in effect for the particular case and be aware that some firms will allow an associate to elect a particular plan. Base salary is tied to a certain minimum, and an associate may get a bonus for meeting specified "billables".  New associates are often not efficient but they need to record as many hours as they can to meet their targets. The matters they work on are usually ones where they have no direct relationship with the client. New associates are most likely to be under great pressure to bill very high hours. If they have not developed the discipline to record their times daily, some time may go by before the associate enters the work description and time.  Some will give in to the temptation to guess and to exaggerate in order to meet the demands on them, anticipating that it will be at least a month and maybe longer before anyone questions the time. Be observant for elastic phrases to describe what they did in a way which is easy to justify or at least hard to disprove. Phrases such as "review documents produced by counsel, 8.0 hours", "discovery, 6.0 hours", "prepare for trial 9.0 hours", etc., should trigger suspicion.  Scrutinize newer associates' times first.  The fewer the years of practice, the higher the probability of padding. The ABA Commission on Billable Hours Report recognizes that hourly billing penalizes efficient and productive lawyers and "may allow, indeed may encourage, profligate work habits" [ABA Commission on Billable Hours Report (August, 2002), at pages 6 -8].*

*It is also generally accepted that the more timekeepers on a case, the higher the bill will be.  Pay particular attention to time recorded by newer associates who record time on the matter only briefly, such as one or two months*

84.    In *Hensley v. Eckerhart* (1983) 103 S.Ct. 1933, the United States Supreme Court stated that in staffing cases, counsel is required to exercise "billing judgment", which means exercising judgment to adjust or write down fees and/or expenses incurred when the fees would be excessive, duplicative, or unnecessary:

*Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from*

29

*a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here." (Id. at 1939-40.)*

85.    In *Kronfeld v. Transworld Airlines, Inc.,* 129 F.R.D. 598, 602 (S.D.N.Y. 1990), a class action wherein fees were awarded, the court had to determine the lodestar and adjustment thereof for "overstaffing and other forms of duplicative or inefficient work … In addition, a court must analyze the tasks entrusted to various lawyers to ensure that they were performed by individuals with appropriate skills and experience. Partners should not perform duties that could as readily be performed by associates, and associates should not do paralegal work." (Citation omitted).  See also *Lochren v. County of Suffolk,* 344 Fed. Appx. 706, 709 (2nd Cir. 2009) (court did not err in applying 25% across-the-board reduction in fees to compensate for overstaffing and needless duplication).

86.    It is my opinion that the high number of transient timekeepers reflects overstaffing and a general lack of billing judgment, and I recommend that the billing entries by these 7 attorneys collectively totaling **$11,952.50** at adjusted hourly rates be disallowed.

**Recommended Disallowance:**

**Net Fees:  $219,260.00**
**Transient and Excessive Billers Disallowance: - $11,952.50**
**Net Fees:  $207,307.50**

## III.    EXCESSIVE INTRA/INTER-OFFICE COMMUNICATION

87.    Based on my years of experience and case law there are "red flags" of possible overbilling which include, *inter alia*, an excessive amount of intra-firm

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

communication.   Similar to block billing and vague entries, law firms should have quality control procedures that can guard against excessive intra/inter-office communication.  Plaintiff's Counsel lacked such adequate quality control procedures in this case.

88.   I fully recognize that intra-office/inter-office communication is an important aspect of case development and preparation, but it is no longer productive when done to excess. In my opinion, the conferencing in this case goes beyond what is normally considered necessary and productive.

89.   In *Munoz v. California Business Bureau, Inc.*, Case No. 1:15-cv-1345-BAM, 2017 WL 3009210 (E.D. Cal. July 14, 2017), the court examined a fee request and found the hours billed to intra-office conferencing to be unreasonable. The court stated:

> [A] review of counsels' billing records reveals that counsel billed over 10 attorney hours for interoffice conversations between all three attorneys to discuss case status or strategy.  While it is reasonable to spend some time coordinating legal resources, it is not reasonable to double or triple-bill a client for internal meetings, many of which appear to be for partner, Mr. Hyde, to provide instructions to his junior associates, Mr. Connolly and Ms. Dorman. *See Gauchat-Hargis v. Forest River, Inc.*, No. 2:11-cv-02737-KJM-EFB, 2013 U.S. Dist. LEXIS 128508, 2013 WL 4828594, (E.D. Cal. Sep. 6, 2013) (finding it unreasonable for partners and associates to collectively "triple-bill" a client for attending internal meetings).
>
> For example, on June 16, 2016, Mr. Connolly and Ms. Dorman each billed .4 hours to "speak with Robert Hyde" about "opposing counsel's summary judgment letter." (Doc. 29-8, Exh. A at 4).  Mr. Hyde billed a slightly longer .6 hours for that same meeting ostensibly in preparation to provide Mr. Connolly and Ms. Dorman further instruction at the meeting.  Given the triple-billing here for these kinds of internal communications, the Court agrees with

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

31

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Defendant that such charges are excessive. *See Chalmers* [*v. City of Los Angeles*], 796 F.2d [1205] at 1211 [9th Cir. 1986] (The court may reduce those hours where a case is overstaffed and hours are duplicated and where the hours expended are deemed to be excessive). Thus, while the billing of 3.3 hours to conduct strategy meetings by Mr. Hyde was reasonable, the additional duplicative billing to attend those meetings was not. Accordingly, the Court will deduct the 3.3 hours each spent by Ms. Dorman and Mr. Connolly to attend meetings with co-counsel for a total reduction of 6.6 hours.

*Id.* at *5. A true and correct copy of this opinion is attached as **Exhibit 21.**

90.     The *Munoz* court thus allowed the time for one timekeeper to be involved in a meeting, but disallowed the time billed by other timekeepers for that same meeting. The same analysis can apply in cases in which one timekeeper bills to draft and send an email or memo and another timekeeper bills to receive and review that communication.

91.     Rather than adding value, excessive intra/inter-office communication potentially burdens and inflates fees (detracting resources from other items and tasks). There are 1,142 Plaintiff's Counsel billing entries for this entire case, excluding "No Charge" entries. Of that amount, there are 546 entries (47.8% of all entries excluding "No Charge" entries and Transient/Excessive Billing Entries) totaling **196.40** hours and fees of **$75,475.00** at adjusted hourly rates reflecting calls, discussions, e-mails, meetings or review of work by within and between Kiesel Law and Knight Law offices as set forth in **Exhibits 22** and **23** attached hereto. This amounts to 36.4% ($75,475.00/$207,307.50) of all fees (excluding Transient/Excessive Biller entries) relating to intra/inter-office communication.

92.     Over the past 25 years, I have audited major national and international laws firms and in general the amount of intra-office conferencing averaged between

32

2% to 4% of the total fees.  Using this as a benchmark, it is my opinion that a reasonable amount of billing for conferencing should not exceed 4% of total fees.

93.     As the Ninth Circuit explained, instead of setting forth an hour-by-hour analysis of a fee request, the court may make an across-the-board percentage cut with respect to disputed hours as a "practical means of trimming the fat" from a fee application.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (citation omitted).

94.     It should be noted that some of the entries contain in the intra/inter-office communication exhibits are blocked billed so may reflect additional work descriptions in the entries.  Based upon my review of Plaintiff's Counsels' billing entries and my experience in reviewing intra-office communication, it is my opinion that 4% of all remaining net adjusted fees totaling $207,307.50 be allowed for intra/inter-office communication.  4% of $207,307.50 is **$8,292.30**.  I recommend that the difference between $8,292.30 and all intra/inter-office conference entries totaling $75,475.00 at adjusted hourly rates be disallowed.  This amounts to a disallowance of **$67,182.70** for excessive intra/inter-office conferencing.

**Recommended Disallowance:**

**Net Fees:  $207,307.50**
**Excessive Intra/Inter-Office Communication: - $67,182.70**
**Net Fees:  $140,124.80**

## IV.     VAGUE ENTRIES

95.     The auditor identified a number of entries that are vague because they are lacking sufficient specificity about what was done to justify the time and fees billed.  Based on a review of all the billing records in the case, the auditor found vague entries throughout the billing records.  Vague entries provide little or no information about the nature or significance of the work performed, thereby severely

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

33

hampering a realistic assessment of its utility or the reasonableness of the associated fees. Specifically, billing records should provide "sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., Inc.,* 732 F.2d 495, 502 n.2 (6th Cir. 1984). Vague entries and terse summaries will not suffice to support a fee award. *Levinson v. Prentice-Hall, Inc.*, Civ. No. 85-3440 (CSF), 1989 WL 65622, at *6 (D.N.J. June 7, 1989).

96.   Typically, vague entries omit crucial information about one or more essential elements of a time description, *such as the specific activity undertaken, a particular document reviewed or drafted, identities of participants in a meeting or telephone conference, or the subject matter of the meeting or telephone conference.* Vague time entries simply mention or hint at a particular task, and leave it to the reader to fill in the gaps. Vague time entries are essentially incomplete entries. As such, they neither sufficiently document nor adequately support a statement for fees for services.

97.   The vagueness of these and other similarly deficient billing entries makes it impossible for the auditor to assess whether the time claimed was reasonably expended. *See Davis v. Prison Health Servs.,* No. C 09-2629 SI, 2012 WL 4462520, at *11 (N.D. Cal. Sept. 25, 2012) (concluding that such billing entries as "conference calls with co-counsel," "review e-mail from opposing counsel," "review e-mail chain," "draft e-mail," and "legal research" were insufficiently detailed and reducing the fee award on that ground); *McCarthy v. R.J. Reynolds Tobacco Co.,* No. CIV. 2:09-2495 WBS DAD, 2011 WL 4928623, at *4 (E.D. Cal. Oct. 17, 2011) (reducing a fee award where most of counsel's entries referred generally to "legal research" and "conversations with [co-counsel]" "without

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S
RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR
ATTORNEYS' FEES, COSTS, AND EXPENSES

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

identifying the subject of the research or conversations"); *Ambriz v. Arrow Fin. Servs., LLC*, No. CV 07-5423-JFW (SSx), 2008 WL 2095617, at *5 (C.D. Cal. May 15, 2008) (finding that billing entries for a "telephone conference" were inadequate because the Court could not determine the reasonableness of the time spent without being provided any information on the "nature of the conference"); *Lowe v. Unum Life Ins. Co. of Am.*, No. CIV. S-05-00368 WBS GGH, 2007 WL 4374020, at *4-5 (E.D. Cal. Dec. 14, 2007) (denying attorney's fees for time spent on "monthly file review," "review" and "paperwork" for lack of sufficiently detailed time records).

98.    In *In re Pierce,* 190 F.3d 586, 593-94 (D.C. Cir. 1999), the D.C. Circuit confirmed that its general practice was to reduce vaguely entered hours of plaintiffs' attorneys by 10%.  Similarly, the Eighth Circuit in *H.J. Inc. v. Flygt Corp.,* 925 F.2d 257, 260 (8th Cir. 1991), upheld a district court's reduction of hours billed by the prevailing plaintiff's attorney by 20% for vague billing entries.  Finally, in *Gratz v. Bollinger,* 353 F. Supp. 2d 929, 939 (E.D. Mich. 2005), District Judge Duggan reduced requested fees 10% due to block billing and vague entries.  *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."); *see also McCarthy*, 2011 WL 4928623, at *5 (utilizing a one-third reduction of the requested hours where the counsel's billing records lacked sufficient detail).

99.    A list of examples of vague entries totaling **$7,670.00** at adjusted hourly rates is attached hereto as **Exhibit 24.**  In my opinion, both case law and standard billing practice require more in the way of justification for the vague billing entries in this case.  Plaintiff's Counsel's billing records contain entries that are devoid of the identity of parties involved in an e-mail, meeting or telephone conference, as well as the subject of the meeting or telephone conference.

100.   I recommend a 50% reduction of the entries in Exhibit 24 due to the

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

35

1  vague nature of these billing entries where the lack of specificity severely interferes

2  with the auditor's ability to analyze the billing records in this case.  50% of

3  $7,670.00 in vague entries at adjusted hourly rates amounts to a recommended

4  reduction of **$3,835.00**.

5      **Recommended Disallowance:**

6

7      **Net Fees:  $140,124.80**
       **Vague Entries: - $3,835.00**

8      **Net Fees:  $136,289.80**

9  **V.   MOTION TO REMAND ENTRIES AND FAILURE TO**
       **ALLOCATE FEES AMONG SUCCESSFUL AND**

10      **UNSUCCESSFUL CLAIMS**

11      101.   Finally, Plaintiff's Counsel should not recover fees related to causes of

12  action for which they were unsuccessful.  It is well established that where a

13  "plaintiff has achieved only partial or limited success, an attorney's fee based upon

14  the product of hours reasonably spent times a reasonable hourly rate may be

15  excessive[.]" *Joseph v. Ruffo*, 476 N.Y.S.2d 386, 388 (N.Y. App. Div. 1984).  This

16  is so even when "the nonsuccessful claims are interrelated with the successful

17  claims." *Id*.  In such a case, "[t]he District Court may, in its discretion, attempt to

18  identify specific hours that should be eliminated, or it may simply reduce the

19  [requested] award to account for the limited success." *Abrahamson v. Bd. of Educ.*,

20  374 F.3d 66, 79 (2d Cir. 2004).

21      102    Further, Plaintiff's Counsel should not recover fees in this case for a

22  Motion to Remand that was not granted and that was not just for the benefit of Mr.

23  Pedante's case.

24      103.   Attached as **Exhibit 25** and **26** are Kiesel Law and Knight Law fee

25  entries related to the Motion to Remand collectively totaling **79.4** hours and

26

27                                    36

28

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**$20,752.50** in fees at adjusted hourly rates which I recommend be disallowed in their entirety.

104.    Across the board percentage cuts in the fees claimed are routinely utilized so that courts do not misuse their time "set[ting] forth item-by-item findings concerning what maybe countless objections to individual billing items." *McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006); *Williamsburg Fair Housing Committee v. The New York City Housing Authority*, 2007 WL 486610,*5 (S.D.N.Y. February 14, 2007); *Daiwa Special Asset Corp.,* 2002 WL 31767817,*2 (citing *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). See also *In re Poseidon Pools of America*, 180 B.R. at 751; *In re Navis Realty, Inc., 126 B.R.* at 144; *In re Adventist Living Ctrs., Inc.,* 137 B.R. 701, 706 (Bankr.N.D.Ill. 1991).

105.    On September 5, 2019, the Court granted Ford's motion to dismiss Mr. Pedante's implied warranty cause of action pursuant to the Song Beverly Act. (See Order Granting in Part, and Denying In Part Motions to Dismiss First Amended Complaints, MDL No. 2814, Dkt. 452 at pp. 5-7, 12.)  On October 19, 2019, Mr. Pedante's three fraud causes of action and request for punitive damages were adjudicated in Ford's favor.  (MDL No. 2814, Dkt. 605.)

106.    Mr. Pedante's case went to trial on November 14, 2019 with only one cause of action remaining, (Song Beverly express warranty claim).  The jury ultimately reached a verdict on the sole express warranty claim and on December 2, 2019, the Court entered a Joint Judgment on Jury Verdict, as follows:

> *(1) Judgment in favor of Defendant Ford Motor Company as to Plaintiff Mark Pedante's claims for Breach of Implied Warranty-Violation of Song-Beverly Act, Fraudulent Inducement-Concealment, Fraudulent Inducement-Intentional Misrepresentation, and Fraudulent Inducement-Negligent Misrepresentation, and each of these claims is dismissed with prejudice.*

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

37

*(2) Judgment is entered in favor of Plaintiff Mark Pedante on his claim for Breach of Express Warranty-Violation of Song-Beverly Act. Plaintiff shall recover from Defendant Ford Motor Company, the amount of $21,721.69 in stipulated damages and $43,443.38 in civil penalties, for a total judgment of $65,165.07 with post-judgment interest thereon at the weekly average one-year constant maturity Treasury yield for the calendar week preceding the date of the entry of the judgment, which at the time of entry of judgment is 1.5% per annum.*

107.    Plaintiff's Counsel has failed to separate and apportion the fees claimed between the one Song Beverly Act cause of action decided in favor of Plaintiff and the four causes of action decided in favor of Ford.  "When a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action." *Akins v. Enterprise Rent-A-Car Co. of San Francisco*, 79 Cal.App.4th, 1127, 1133 (2000).

108.    In *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, the trial court reduced a fee request by a party who prevailed on an anti-SLAPP motion by over 90%, from over $250,000 to $21,300, because counsel for the party had undermined the credibility of their application by "padding" their hours, relying on "vague billing entries," and seeking fees for time unrelated to the anti-SLAPP motion.

109.    After disallowing $20,752.50 for the Motion to Remand, I recommend disallowing the remaining 80% of net fees of **$115,537.30** ($136,289.80 - $20,752.50) which is **$92,429.84** to apportion fees related to the four causes of action entered in Ford's favor.  I recommend allowing 20% of the remaining net fees of $115,537.30 to account for the one cause of action entered in Plaintiff's favor which amounts to **$23,107.46.**

**Recommended Disallowance:**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

38

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

**Net Fees:  $136,289.80**
**Motion to Remand Disallowance: - $20,752.50**
**Failure to Allocate Disallowance: - $92,429.84**
**Net Fees: $23,107.46**

### SUMMARY

110.   Accordingly, below is a summary of my recommended disallowances:

| | |
|---|---|
| **Requested Lodestar** | **$385,996.25** |
| Hourly Rate Adjustment | - $166,736.25 |
| Transient and Excessive Billers | - $11,952.50 |
| Excessive Intra/Inter-Office Communication | - $67,182.70 |
| Vague Entries | - $3,835.00 |
| Motion to Remand Entries | - $20,752.50 |
| Failure to Allocate Among Successful and Unsuccessful Claims | - $92,429.84 |
| | |
| **Total Fees Disallowed** | **$362,888.79** |
| **Total Fees Allowed** | **$23,107.46** |

111.   In the event Plaintiffs' Counsel is awarded attorney's fees in this matter,

my fee adjustments result in a total recommended disallowance of **$362,888.79** and total recommended attorney's fees of **$23,107.46**.  I believe this a reasonable amount of recommended fees considering Plaintiff's Counsel's lack of billing judgment discussed herein, failure to apportion fees to the four causes of action entered in Ford's favor and the one cause of action entered in Mr. Pedante's favor, subject to further allocation among the 30 IDP cases.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 29th day of January, 2020 at Honolulu, Hawaii.

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA  94111

39

_____

James P. Schratz

40

DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF FORD MOTOR COMPANY'S
RESPONSE IN OPPOSITION TO PLAINTIFF MARK PEDANTE'S MOTION FOR
ATTORNEYS' FEES, COSTS, AND EXPENSES